## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRYL EDEN,** | : | **CIVIL NO. 3:21-CV-1966** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SUPERINTENDENT RIVELLO and** | : | |
| **DEPUTY KOTTLER** | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Factual Background

The parties have consented to magistrate judge jurisdiction and this case was referred to the undersigned on February 4, 2024, for all further proceedings. The *pro se* plaintiff in this civil rights action, Darryl Eden, is an inmate currently housed at State Correctional Institution (SCI) Camp Hill, but the cause of action arises out of a period when Eden was housed in the Restricted Housing Unit (RHU) at SCI Huntingdon in 2020 and 2021. The plaintiff alleges that the two defendants in this case, Defendant Rivello, Superintendent of SCI Huntingdon, and Defendant Kohler, Deputy Superintendent of SCI Huntingdon, violated his First, Eighth, and Fourteenth Amendment rights when he was held in the RHU for two years while awaiting assessment for the Restricted Release List (RRL). The plaintiff alleges that he did not

1

fit the criteria for the RRL, and his prolonged, indefinite placement in the RHU awaiting determination on his RRL status violated his right to be free of cruel and unusual punishment under the Eight Amendment and was retaliation for his free speech in violation of the First Amendment.[1]

The facts that form the basis of the complaint can be briefly summarized.[2] On August 3, 2020, Eden received a misconduct while out in the prison yard for threatening a corrections officer, using abusive, obscene, or inappropriate language, refusing to obey an order, and unauthorized "group activity" in the form of attempting to initiate a riot. (Docs. 49-1; Doc. 48-2, at 17-23). Eden denies the charges and stated in his deposition that he "had a few words" with a corrections officer in the yard, but never told anybody to "take a stand in the yard." (Doc. 48-2, at 18-19). After a

---

[1] As the defendants point out, the plaintiff's Fourteenth Amendment claims are unclear, though the defendants have broadly construed his allegations as asserting an Equal Protection claim, since the plaintiff avers that dozens of other, more violent, inmates were not punished to the same extent.

[2] Under Rule 56 of the Federal Rules of Civil Procedure, we are empowered to review the record as a whole in determining whether a genuine issue of material fact exists for a jury. Given the *pro se* nature of the plaintiff's complaint, which lends itself to some ambiguity, and the fact that the defendants' statement of facts focuses only on the issue of exhaustion but does not provide a factual summary as to the merits of the cause of action, our summary includes facts from the record as a whole, including the deposition of the plaintiff. As we address below, the plaintiff has not responded to the defendants' motion for summary judgment, despite two explicit court orders to do so, thus, to the extent that our summary includes factual averments from the defendants' statement of material facts, they are deemed to be admitted.

hearing, he was sentenced to ninety days in the RHU. (Doc. 49-1; Doc. 48-2, at 22-23) Eden alleges he remained in the RHU for two years[3] while he awaited a determination on his RRL status, (Doc. 48-2 at 26), with his status being reviewed every ninety days. (Id., at 23). In December 2021, Eden was denied RRL and transferred from the RHU. (Id., at 25). Eden alleges that he never qualified for the RRL because he has never engaged in any violent behavior toward prison officials and did not suffer from a mental illness. (Id.) He alleges his continued placement in the RHU while he awaited RRL determination, despite not qualifying for RRL, was retaliatory for arguing with corrections officers and amounted to cruel and unusual punishment. (Doc. 1).

As to the involvement of the defendants, the plaintiff testified at his deposition that he asked Superintendent Rivello when he was going to be released from RHU and he informed him that they were making a "step-down" program for him, and that if he did not take it, he would be recommended for RRL and that his placement in RHU would be prolonged. (Id., at 29). He alleges that Defendant Kohler was at each of his PRC review hearings and told him they were waiting for Secretary Wetzel to

---

[3] Eden testified that he remained in the RHU for 24 months, (Doc. 48-2, at 26), but his cell history records note that he was placed in the RHU at SCI Huntingdon on August 3, 2020, but transferred to SCI Camp Hill in March of 2022 and released to general population at SCI Camp Hill by April 6, 2022. (Doc. 48-1).

sign off on his RRL packet but testified that the Department of Corrections never knew anything about it. (<u>Id.</u>, at 30-31). Eden stated that he reached out to State Representative Patty Kim who contacted the Department of Corrections and had him transferred from the RHU. (<u>Id.</u>)

The plaintiff filed the instant complaint on November 18, 2021, (Doc. 1), while he was still in the RHU, alleging that his indefinite confinement in the RHU pending his RRL determination violated his First, Eighth, and Fourteenth Amendment rights. (Doc. 1). He requested compensatory and punitive damages and an immediate transfer. (<u>Id.</u>) The defendants filed the instant motion for summary judgment with accompanying documents in support on January 31, 2024. (Docs. 47, 48, 49). As the plaintiff had not responded to the defendants' motion within the time allotted by Local Rule 7.6, on March 1, 2024, the Court issued an order directing the plaintiff to file a brief in opposition to the motion for summary judgment by March 15, 2024, and admonishing him that failure to respond could result in dismissal of his claims under Local Rule 7.6. (Doc. 51). On March 18, 2024, the plaintiff filed a letter with the Court requesting appointment of counsel, (Doc. 52), and on March 21, 2024, we denied his request, and again notified the plaintiff that if he failed to respond to

the defendants' motion for summary judgment by April 1, 2024, the motion would be deemed unopposed. (Doc. 53).[4]

The plaintiff has not responded to this order or the defendants' motion for summary judgment and the deadline for response has now passed. The plaintiff's failure to timely respond to the defendants' motion for summary judgment, and his non-compliance with the rules of this court, now stymies any efforts to litigate his claims. Further, it appears the plaintiff's claims fail on their merits.[5] Accordingly, for the reasons set forth below, the defendants' motion for summary judgment is granted.

## II.   Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendant has moved for summary judgment pursuant to Rule 56 of the

---

[4] The plaintiff has repeatedly expressed difficulties in litigating this case without representation in his requests to appoint counsel, (Docs. 15, 37), and recently notified the court that he did not understand what motion he needed to file. (Doc. 52). Although, as a *pro se* litigant, the plaintiff was advised by this Court at the outset of this lawsuit of his responsibilities in this litigation, and was repeatedly ordered to respond to this motion, we are cognizant of the challenges faced by *pro se* incarcerated litigants in federal court. Thus, although, under the Local Rules, the defendants' motion for summary judgment should be considered unopposed and granted, we have also conducted a thorough review of the record and address the merits of the plaintiff's claims in dismissing this action.

[5] It is also worth noting that, on January 30, 2023, the plaintiff sent a letter to the defendants' counsel indicating he no longer wished to pursue his claims against them, (Doc. 34-1), but after being ordered to file a Notice of Dismissal, reversed course and notified the court that he did agree to voluntary dismissal. (Docs. 35, 36).

Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."

Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x

896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations,

but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011). It is against this legal backdrop that we review the defendants' motion in this case.

## B. Under The Rules of This Court the Defense Motion Should Be Deemed Unopposed and Granted.

Under the Local Rules of this Court the plaintiff should be deemed to concur in this motion for summary judgment, since the plaintiff has failed to timely oppose the motion or otherwise litigate this case. This procedural default completely

9

frustrates and impedes efforts to resolve this matter in a timely and fair fashion and, under the rules of this Court, warrants dismissal of the action. Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.'" Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, at *1 (M.D. Pa. Aug. 26, 2010) (quoting Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)). In this case, the plaintiff has not complied with the local rules, or this Court's order, by filing

a timely response to this motion. Therefore, these procedural defaults by the plaintiff

compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. *See*
> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve
> cases on their merits whenever possible. However, justice also requires
> that the merits of a particular dispute be placed before the court in a
> timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157
> F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D. Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of

our legal system. A failure on our part to enforce compliance with the rules, and

impose the sanctions mandated by the rules when such rules are repeatedly breached,

"would actually violate the dual mandate which guides this Court and motivates our

system of justice: 'that courts should strive to resolve cases on their merits whenever

possible [but that] justice also requires that the merits of a particular dispute be placed

before the court in a timely fashion.' " Id. Therefore, we are obliged to ensure that

one party's refusal to comply with the rules does not lead to an unjustified prejudice

to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to

comply with Local Rule 7.6 by filing a timely response to this motion. This failure

now compels us to apply the sanction called for under Rule 7.6 and deem the motion to be unopposed.

### C. **The Plaintiff's Constitutional Claims Fail on Their Merits.**

Furthermore, beyond the procedural failures which compel us to deem the defendants' motion for summary judgment to be unopposed, the merits of the plaintiff's claims also compel dismissal of this case. [6]

#### 1. *First Amendment Claims*

Eden contends that he was indefinitely placed in the RHU in retaliation for "running his mouth" to corrections officers in violation of the First Amendment. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at

---

[6] The defendants also argue that the plaintiff failed to exhaust his administrative remedies, barring him from pursuing relief in federal court under the Prison Reform Litigation Act (PLRA). It appears the plaintiff did file three grievances broadly challenging his continued confinement in administrative custody, one of which was appealed to final review. (Doc. 48-3). The defendants argue that this grievance, though fully exhausted, is inadequate because it challenged only the misconduct which led to his placement in the RHU, not his extended placement in the RHU itself, and that he did not name either defendant in this grievance. In our view, the allegations in the grievance largely parallel those in plaintiff's complaint, though it does not appear he directly named Defendant Rivello or Kohler in this grievance but implicated them through reference to his PRC reviews. Nonetheless, because his claims fail on their merits, we do not reach our decision based on the issue of exhaustion.

the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d Cir. 2002).

Here, Eden did not engage in protected activity which would trigger First Amendment protection. On this score:

> To determine whether [the plaintiff's] speech was protected, we ask whether "he engaged in this speech in a manner consistent with legitimate penological interests." <u>Watkins v. Kasper</u>, 599 F.3d 791, 796 (7th Cir. 2010). The prison setting is distinctive, and it affects many constitutional rights. Relevant here, we have held that an inmate's speech is not protected where it is "disruptive" and "confrontational." <u>Id</u>. at 798, 799. Similarly, "speech that violates prison [disciplinary policies]," like "backtalk," is unprotected. <u>Kervin v. Barnes</u>, 787 F.3d 833, 835 (7th Cir. 2015).

<u>Whitfield v. Spiller</u>, 76 F.4th 698, 708 (7th Cir. 2023). In our view, Eden argues that he had a constitutional right to "mouth off" to corrections officers, but the constitution simply does not protect this type of "backtalk" speech in the prison context.

Moreover, even if Eden could make the threshold showing that the defendants retaliated against him for protected constitutional activity, the defendants have established that there was a genuine penological reason for his RHU placement. Eden received a misconduct and a hearing, in which he pleaded guilty to refusing an order, and was found guilty of other charges relating to the incident in the prison yard for which he was placed in the RHU. Thus, the defendants have demonstrated a genuine

13

penological interest for which Eden was placed in the RHU. Further, the record demonstrates that Eden's placement was reviewed every ninety days at a PRC hearing and adjusted his status according to the hearing findings. (Doc. 48-2, at 26). Accordingly, summary judgment will be granted as to the plaintiff's First Amendment claim.

## 2. *Eight Amendment Claims*

As to the plaintiff's claim that his confinement in the RHU violated his Eighth Amendment right to be free from cruel and unusual punishment, several overarching and animating constitutional considerations govern analysis of any Eighth Amendment claim. As the Court of Appeals has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.
>
> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was

14

sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S. Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344–45 (3d Cir. 2000).

Thus, while prison officials may violate an inmate's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to an inmate's needs, to sustain such a claim an inmate must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

The same guiding principles apply to inmate complaints regarding their conditions of confinement. "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health." Fuentes, 206 F.3d at 345

(quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). "The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'" <u>Id.</u> (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1991)). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

<u>Atkinson v. Taylor</u>, 316 F.3d 257, 272 (3d Cir. 2003). Thus, these claims also require proof of a both culpable state of mind and objective proof of physical conditions of confinement that shock the conscience and depart from minimal civilized standards of life's necessities. Simply put, "[t]o violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard." <u>Hammond v. Bledsoe</u>, 2013 WL 5797647, at *10 (M.D. Pa. Oct. 28, 2013) (citing <u>Riley v. Jeffes</u>, 777 F.2d 143, 147 (3d Cir. 1985); <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 757 (3d Cir. 1979)).

In this case, Eden asserts that his placement in the RHU while his RRL status was being evaluated violates the Eighth Amendment. At the outset, it is well settled that mere placement in Administrative Custody does not violate the Eighth

16

Amendment. <u>Griffin v. Vaughn</u>, 112 F.3d 703, 709 (3d Cir. 1997). <u>See also</u> <u>Booze v. Wetzel</u>, 2014 WL 65283, at *11 (M.D. Pa. Jan. 8, 2014) ("[M]ere placement on AC, on the RRL, does not violate the Eighth Amendment"). Thus, we cannot conclude that the mere placement of Eden in the RHU itself violated the Eighth Amendment.

Nor has Eden established that the length of his confinement in Administrative Custody violated the Eighth Amendment. Indeed, while we recognize that Eden remained in Administrative Custody in the RHU for close to two years, he has not set forth any evidence tending to show that his confinement in Administrative Custody denied him "the minimal civilized measure of life's necessities," <u>Fuentes</u>, 206 F.3d at 345 (quotations and citation omitted), or that there was no legitimate penological objective for his placement in Administrative Custody. Indeed, Eden concedes that he "had words" with a corrections officer prior to receiving the misconduct that landed him in the RHU, though he denied threatening or cussing at a corrections officer and alleged that he was forced to plead guilty at his RHU hearing.[7] A misconduct from August 3, 2020, explains that he was sentenced to disciplinary custody for threatening an employee, engaging in or encouraging unauthorized group activity, using abusive, obscene, or inappropriate language, and refusing to obey an

---

[7] Eden has not created an issue of material fact with regard to this contention since he has not provided any evidence to support his bald assertions that the charges in the grievance were based upon a lie.

order. (Doc. 49-1, at 2). Eden also referenced responses to his grievances challenging his RHU status which noted he refused to attend his review hearing in October 2020 and had several other misconducts for threatening staff.[8] (Doc. 48-2, at 32). And his department of corrections misconduct report tends to reinforce this assertion. (Doc. 49-1).

Moreover, Eden does not allege that he has suffered any physical or psychological injury, beyond stating in his deposition that he was seeing "black spots" on the wall, and he noted psychological treatment and counseling was available to him while in the RHU. (Doc. 48-2, at 33). Thus, Eden has failed to show that the conditions of his confinement were "dangerous, intolerable or shockingly substandard." Hammond, 2013 WL 5797647, at *10. Given that Eden has not shown a dispute of material fact as to the conditions of his confinement, we conclude that his Eighth Amendment claim fails on its merits. Accordingly, summary judgment will be granted on this claim.

---

[8] Much of our understanding of this case and the administrative procedures which took place during Eden's RHU confinement we glean from his deposition testimony, in which he read and referenced several documents which are not part of the discovery in this case, despite the defendants' repeated attempts to obtain them.

### 3. *Fourteenth Amendment Claims*

The plaintiff also alleges that his two-year placement in the RHU violated his rights under the Fourteenth Amendment. While his claim is somewhat enigmatic, it seems to imply that he was denied equal protection under the law because many other inmates with more violent misconducts were released from the RHU while he remained in administrative custody.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is not a requirement that all persons be treated identically but is instead a general direction that similarly-situated persons be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). In the prison context, an inmate must show that he was treated differently from similarly situated inmates due to intentional or purposeful discrimination. Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985); Francis v. Carroll, 659 F. Supp. 2d 619, 629 (D. Del. 2009). "Absent the presence of a fundamental right or a protected class (e.g., race), the disputed prison policy is subject to rational basis review, which requires only 'that a regulation which results in unequal treatment of an inmate bear some substantial relationship to a legitimate penological interest." Id. (quoting Boyer v. Taylor, No. 06-694-GMS, 2007 WL 2049905, at *10, 2007 U.S. Dist. LEXIS

51159, at *29 (D. Del. July 16, 2007)); see also Turner v. Safley, 482 U.S. 78, 89 (1987).

An equal protection claim may also be brought by a "class of one," where a plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam; see also Overly v. Garman, 599 Fed.Appx. 42 (3d Cir. 2015) (holding that in order to establish a class-of-one equal protection claim a plaintiff must show that (1) the defendants treated him differently than others similarly situated, (2) the defendants did so intentionally, and (3) there was no rational basis for the difference in treatment).

Beyond his threadbare assertions that "30 to 40 inmates with threaten or assaulted staff members or assaulted other inmates" were transferred or released from the RHU while he remained in the RHU, the plaintiff has provided no explanation or supporting evidence to demonstrate he was intentionally treated differently from any other inmate housed at the RHU. And, as previously discussed, it appears his placement in the RHU "bear[s] some substantial relationship to a legitimate penological interest" given that his placement in the RHU followed an altercation with a corrections officer and resulted from a misconduct being issued and a hearing in which he was found guilty of threatening an employee, abusive language, and

20

refusing an order, among other charges. As the plaintiff has presented no evidence that he was denied equal protection under the law, his claim fails.[9]

## III.   <u>Conclusion</u>

In closing, the plaintiff's failure to litigate this case and provide evidence to support his claims, coupled with the multiple deficiencies in his claims, which fail to rise to a constitutional deprivation, the defendants' motion for summary judgment in this case is GRANTED. An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED:      April 12, 2024

---

[9] It does not appear that Eden attempts to raise a procedural due process claim, but we simply note that his deposition testimony indicates he received a hearing and regular review of his RHU placement in compliance with DOC policy.